CUYLER *vs.* THE TRUSTEES OF THE VILLAGE OF
ROCHESTER.

Where, on the altering of a street in the village of Rochester, damages were
assessed to the owner of land taken for the street, and an action was
brought by him against the corporation of the village for the recovery of
the sum assessed in his favor, and it appeared that there was a building
erected on the ground required for such alteration, *the expense of removing
which would exceed* $100, IT WAS HELD, that the action did not lie, and that
the corporation were not *estopped* from alleging that the whole proceeding
was a nullity for want of jurisdiction in the trustees to make the alteration.

Where several pleas are interposed, some good and some bad, and a *general
demurrer* is put in to all, if either of the pleas is good, the defendant is en-
titled to judgment.

DEMURRER to plea. The plaintiff declared in an action of
debt, on *mutuatus*, claiming $2000 from the defendants, un-
der the 25th section of the *act incorporating the village of
Rochester*, passed 10th April, 1826. The defendants pleaded
*nil debent* and eight other pleas, to which eight last pleas the
plaintiff put in *one general demurrer*, assigning a variety of spe-
cial causes of demurrer. The *third* plea is the only one which
received the consideration of the court, for which reason it
alone is here stated. It commences with a *protestando* that
the street afterwards mentioned *was not widened*, nor was *any
land of the plaintiff taken for a street*, nor was *any judgment*
of the president of the board of trustees ever made or entered;
and for plea, the defendants say *actio non*, because, on the 13th
June, 1827, a petition was presented to the board of trustees
that the north line of Main street, in the said village, might
be established in a manner particularly specified in the peti-
tion; and at the same time a stipulation, signed by the plain-
tiff in this suit and one J. N. Stebbins, was presented to the
board, that they, the owners of land and buildings then erect-
ing within the line specified in the petition, *waived* all objec-
tion to the line being laid over the site of their erections,
(buildings,) *so far as it affected the jurisdiction of the trustees*
in establishing such line; and that thereupon it was resolved by
the board, and their resolution was entered of record, that the

NEW-YORK,
May, 1834.

Cuyler-
v.
Trustees of
Rochester.

north line of Main street be established according to the prayer of the petition, and declaring such line to be the north line of the street. The defendants then aver, that before, at and after the adoption of such resolution by the board, there was erected and standing a building on the ground which would be taken for the street, (if the resolution was carried into effect,) *the expense of removing which would, and did exceed the sum of* $100, so that in fact the street was altered so as to run across or over the site of a building, the expense of removing which would and did exceed $100 ; *without this,* that the defendants ever borrowed any money of, or were otherwise indebted to the plaintiff in any other manner or by any other means than by establishing the line of the said street in manner aforesaid, and the proceedings to have the damage and recompense due the plaintiff therefor assessed, according to the provisions of the 25th section of the act—all which the defendants are ready to verify ; wherefore they pray judgment, &c. The cause was submitted on written arguments.

*A. Samson & O. Hastings,* for the plaintiff.

*S. Boughton,* for the defendants.

*By the Court,* NELSON, J. The 25th section of the act of 1826, sess. 49, p. 127, incorporating the village of Rochester, provides that if the board of trustees neglect, on demand, to pay the sum assessed as damages to any individual, caused by laying out or widening any street, the party thus entitled to the sum assessed may sue the board of trustees, and recover the same in an action of debt on *mutuatus,* with interest and costs. This suit is brought by the plaintiff under this section, to recover $2000 assessed to him. The defendants have pleaded numerous pleas in defence, to all of which, except the first, the plaintiff has demurred. It will be material only to notice the *third* plea. By the 21st section of the act, the trustees are prohibited from laying out or widening any street, so as to run across or over the site of any house or building, the expense of removing which shall exceed $100 ; and this plea is founded upon this provision, averring that the street, as al-

tered, run across or over the site of a building, the expense of

removing which exceeded that sum. There is an admission in the plea, that the owners waived any objection to the alteration, so far as the jurisdiction of the trustees was concerned; and this is supposed by the counsel for the plaintiff to neutralize the force and effect of the plea.

This case has been before the court on a motion to quash a *certiorari,* and also to amend the return of the trustees thereto, on which occasion the chief justice considered this provision of the act, and gave, in my judgment, the true exposition of it. 6 Wendell, 564. He held that the consent of the owners did not give jurisdiction to the trustees, as all the corporators had also an interest in the question, being liable to pay the assessment or expense, and the prohibition in the case where the expense of removing the building exceeded $100, was as well for their benefit as for the benefit of the owners of buildings. It was intimated in that opinion, that if the owners had stipulated to remove the building for $100, jurisdiction would have been given. This may be so, but in case of a failure to perform such stipulation by the owners, I apprehend the loss would fall personally on the trustees; for in no event is the corporation to be subjected to an expense beyond the one hundred dollars.

It is supposed, by the counsel for the plaintiff, that the consent given necessarily implied that the owners would accept the $100 and remove the building; but the language used rather repels such an inference. The intent to be derived from the whole, I think, is, that the owners would waive the objection which the statute afforded them, and permit the street to be widened, leaving their claim for damages open, to be ascertained according to the statute. If it had been the intention or expectation of either party that the expense of removing the building should be limited to the $100, it would have been very easy and natural to have said so. Be this as it may, as the fact of the limitation of the expense to the $100, and not the consent of the owner, is what gives jurisdiction, if at all, it should have been made distinctly and unequivocally to appear, and should not have been left to inference or conjecture. This is a familiar rule of pleading. For

NEW-YORK, aught that appears before us, if the jury, in the assessment of
May, 1834. damages and expenses, had allowed to the owners the whole
Cuyler expense of the removal of the building, we could not say it
v. was erroneous; as we think the better opinion is, that the
Trustees of
Rochester. owners, by the consent given, did not intend, nor did it neces-
sarily carry along with it, a limitation of the expense.

It is said the trustees ought to be estopped from setting up
the want of jurisdiction, after they have taken the property of
the plaintiff, as it is taking advantage of their own wrong, to
his injury. The answer is, that this suit is not against them,
but against the corporation; and if a recovery is had, the cor-
poration must pay the amount. By the first section of the act,
all the freemen, inhabitants within the limits of the village,
are declared to be a body corporate and politic, by the name
of "The trustees of the Village of Rochester," and in that
name they and their successors are capable of suing and being
sued, pleaded, and being impleaded, &c. The trustees, in
executing the duties imposed upon them by the charter, act
as agents of the corporators, and the latter can be bound only
when the trustees act within the scope of their powers. Then
they are bound and may be sued; but they can be sued only in
their corporate name. If, under the idea that the trustees,
and not the corporators, were the parties sued, the doctrine of
estoppel was to be applied, there can be no imaginable excess
of power on the part of these officers, for which the corpora-
tion would not be responsible. This cannot be. The true
exposition is, that all the duties imposed upon, and powers
granted to the corporation, are to be executed through the in-
strumentality of agents, the chief of whom are the trustees;
and all suits against the corporation in the corporate name,
though *in form* against the trustees, are against the principals
themselves, who, like all other principals, may depend them-
selves on the ground that the act by which they sought to
be made responsible was done without authority. The char-
ter prescribes the powers of the trustees, beyond which they
cannot go; if they do, they act as individuals, and not in the
character of trustees, and their proceedings of course are inop-
erative and void. The consequence in this case is, that the
land for which the damages have been assessed, and are

NEW-YORK,
May, 1834.

Cuyler
v.
Trustees of
Rochester.

ought to be recovered by the plaintiff still belongs to him, as there has been no valid devotion of it to the uses of a public street.

The demurrer is put in to the eight last pleas, and if either plea constitutes a good bar to the cause of action, the defendants are entitled to judgment, though the residue may be defective. I do not find this point expressly adjudged in any case, or laid down in any elementary book on pleading. Cases, however, strictly analogous have been decided, which I think afford sufficient authority for the above conclusion. If there be several counts in a declaration, or several breaches are assigned in an action of covenant, some of which are good and others bad, and the defendant demurs to the whole declaration, judgment is given for the plaintiff. 1 Chitty, 643. 5 Bac. 458. 11 East, 565. 2 Johns. Dig. 219, Demurrer. But what, if possible, is still more decisive, where a plea contains distinct matters divisible in their nature as a plea of set-off of separate and distinct demands, if the plaintiff demurs to the whole, though part is bad, the defendant will be entitled to judgment on the whole plea. The demurrer being overruled, as not well taken, leaves the entire plea unanswered. *Powdick* v. *Lyon*, 11 East, 565. In *Dowsland* v. *Thompson*, 1 Wm. Black. 910, the defendant pleaded to an action for freight of a vessel, that the goods were injured on board by the negligence of the plaintiff, whereby he became indebted to the defendant in the sum of £10,000 : he also pleaded a general set-off of £10,000 for work and labor, &c. To this plea there was a demurrer and joinder. The court overruled the demurrer, on the ground that the different parts of a plea of set-off were to be viewed in the light of different counts in a declaration, and as one point of the plea was good, though the other was bad, the demurrer could not be sustained. The principle of these cases was recognized and applied in the case of *Douglass* v. *Satterlee* 11, Johns. R. 22. See also 1 Chitty, 643. It seems to me impossible to distinguish the case of a demurrer to two pleas, one of which is sufficient to bar the action, and the other bad, from the principle so fully settled in the above cases.

Many of the pleas in this case are extremely informal; stuffed with much unimportant matter, and tedious detail, and which would have been stricken out, on application, at the cost of the pleader.

Judgment for defendants.