## GANSON v. THE CITY OF BUFFALO.

### December, 1864.

Under an order appointing *Joseph* G. as one of several commissioners, *James* G. took the oath of office and acted as such. *Held,* that the mistake being shown to be a clerical error, in the order, it was amendable.

Where the charter of a city requires the common council to make a compensation in money, within a fixed time, for land taken for a local improvement, and makes such compensation a general debt or charge on the city, an action lies against the city therefor, after the time limited expired, although the city have not collected the amount from the parties assessed.*

In such a case, those to whom compensation is due are not restricted to a *mandamus,* as would be the case if the sum were payable out of the assessments.

The provision of the charter of Buffalo requiring a city assessor to be appointed on each commission of assessment for local improvements, is unconstitutional; but this objection is not available to avoid the proceedings of a commission, if it does not appear that such appointment was made; and *it seems* that the unconstitutionality of the requirement does not make it illegal for the court in its discretion to make such an appointment.

After the right of a land owner to compensation from the city, for land taken for a local improvement, has become absolute, under a statute making the compensation a charge upon the city, a subsequent amendment of the charter, declaring awards for lands taken, to be payable within a specified time after assessments to be made upon the parties benefited by the improvement, cannot be applied retrospectively to take away the previously vested right of action.†

The provisions of the charter of Buffalo, section 9 of title 8 (*L.* 1853, p. 501),—requiring an application by the majority of property holders, in order to authorize an assessment for local improvements,—apply only to the improvements mentioned in that section, and do not apply to the other improvements mentioned by section 6 of the same title.

Henry B. Gibson (for whom, on his death pending the action

---

* Compare Baldwin *v.* City of Oswego, vol. 1 of this series, p. 62.

† As to the vesting of rights by the exercise of eminent domain, see Brooklyn Park Commissioners *v.* Armstrong, 45 *N. Y.* 234; reversing 3 *Lans.* 429; Detmold *v.* Drake, 46 *N. Y.* 318, and cases cited; Strang *v.* N. Y. Rubber Co., 1 *Sweeny,* 78.

John Ganson and others, executors, were substituted), brought this action, in the superior court of Buffalo, against the city of Buffalo, to recover a sum of money awarded him as compensation for land taken by the city for the purposes of a ship canal.

On the trial the following facts were found. No petition or application whatever was presented to the common council, asking for, or consenting to, the construction of the canal, or the taking of land for it; but on April 20, 1857, the city council adopted a resolution, declaring their intention to take and appropriate certain lands mentioned in the resolution, for the purpose of building the proposed canal. Commissioners were appointed to ascertain the compensation due to the land owners, and on July 31, 1857, these commissioners made and filed with the city clerk their report, which was confirmed on September 7, by which they awarded to the plaintiff nine thousand dollars, as compensation for his interest in the lands described in the resolution. No assessment was ever made or directed, for the purpose of raising the compensation awarded; and after the confirmation of the commissioners' report, the city did nothing toward the construction of the canal, and never entered on the lands.

The portions of the charter material to this case are as follows:

" § 17. The council, upon the confirmation of any report of commissioners, shall direct the just compensation of the owner or owners, or any person or corporations interested in the property as ascertained by the report, together with the cost and expenses of the ascertainment, to be assessed upon the land benefited by the taking of the property, and the assessment shall be made as in other cases.

" § 18. Within one year after such ascertainment, the common council shall pay or tender the several amounts of the compensation so ascertained to the respective owners of the property taken; and in case any such owner shall refuse the same, or be unknown, or a non-resident of the city, or for any reason incapacitated from receiving his amount, or the right thereto be disputed or doubtful, the council may make payment of the portion of such owner into the office of the clerk of Erie county, as clerk of the supreme court, accompanied with a

statement of the facts and circumstances of each case, and a transcript of so much of the report of the commissioners as relates to the ascertainment of the portion so paid in."

On the trial plaintiff offered to read in evidence an order of the superior court of Buffalo, dated November 20, 1862,* which, after reciting that persons had been appointed to act as commissioners to ascertain and report the just compensation to be paid to the persons having an interest in the property proposed to be taken for a ship canal, and that one of the persons so appointed was James G. Hoyt, but by a clerical error his name had been entered in the order book as Joseph G. Hoyt, and since it also appeared by affidavit that James G. Hoyt was the person who acted as commissioner in the proceedings directed to be taken by said order, it was ordered that the record be amended by writing James G., instead of Joseph G. Hoyt.

The admission of this order was objected to, on the ground that when it was made the court had no power so to amend the record mentioned in the order. The court overruled the objection, and the defendant excepted. The plaintiff then offered to read in evidence the report of the commissioners, to which the defendant objected, on the ground that it was not signed by all the commissioners,—the order appointing Joseph G. Hoyt, and the report being signed James G. Hoyt. The court overruled the objection, and the defendant excepted.

At the close of the trial the defendant moved to dismiss the complaint upon three grounds, among others :

1. The compensation awarded to the plaintiff was payable out of a particular fund to be raised by local assessment; and it was not shown that any such fund had been created, or that there were any moneys in the defendant's treasury applicable to the payment.

2. No assessment having been made to pay the award, such award was not payable under the provisions of the charter.

3. No demand of the amount of the award was shown to have been made on the defendant.

The request to dismiss was denied, and the plaintiff had a judgment for eleven thousand nine hundred and sixty-five dol-

---

* After the filing of the report of the commissioners.

lars and eighty-nine cents, which was affirmed by the court at general term, and defendant appealed.

*C. Beckwith*, for defendant, appellant;—As to misnomer, cited Farnham *v*. Hildreth, 32 *Barb*. 277. As to the merits, (besides cases cited in the opinion) Bloodgood *v*. M. & H. R. R. Co. 18 *Wend*. 9 ; Carter *v*. Hagarstown Canal, 2 *Carb*. (*Ind.*), 588 ; Spring *v*. Russell, 7 *Greenl*. 273, 12 *Mass*. 466 ; Calking *v*. Baldwin, 4 *Wend.* 667 ; People *v*. Mead, 24 *N. Y.* .123 ; Baker *v*. Utica, 17 *Id*. 326 ; People *ex rel*. Green *v*. Mayor &c. 20 *How. Pr*. 491 ; also 10 *Wend*. 363, 1 *Barb*. 34, 24 *N. Y.* 119, 19 *Id*. 326.

*James M. Smith*, for plaintiffs, respondents, cited Warren *v*. City of Buffalo (see note on p. 240).

BY THE COURT.—DAVIES, J.—It is insisted on the part of the defendant that the order amending the original order for the appointment of the commissioners was improperly admitted in evidence. The original order named *Joseph* G. Hoyt as one of the commissioners. Under that order *James* G. Hoyt took the oath of office prescribed for the commissioners, and acted as such, and made and signed the report which was confirmed. It is clear that he was the person intended, and who acted, and who was, in fact, the person appointed. There is no evidence in the case that there was any such person as Joseph G. Hoyt, and, it appearing to the court who made the order appointing the commissioners, that the writing of the word *Joseph* in the place of *James*, was a clerical error made by the clerk thereof, and that James G. Hoyt was the person actually appointed, it was competent for the court to amend the order in accordance with the facts. Such order had relation back to the original order, and made that conform to the truth of the matter. The court did not, therefore, err in admitting the order to amend the original order to be read in evidence, and, the original order being thus in fact amended, there was no error in the admission of the report of the commissioners, from which it appeared that the same was made by the persons named in the order of appointment as amended. The fact is found by the

Ganson *v.* City of Buffalo.

court, that the commissioners appointed by the court made and filed their report. If it was necessary to resort to the evidence, it is apparent from it that the facts proven abundantly sustain this finding without any aid from the order of amendment. As already observed, it was competent for the court to amend the proceedings to correct clerical errors. But if this amendment was not made, I am unable to see any reason why the report should have been excluded.

The first, second and third grounds of nonsuit urged in the court below were disposed of by this court, in the case of Warren *v.* City of Buffalo, decided at the June term, 1861. That was an action to recover an award made and confirmed by these defendants for a piece of land taken under their charter for a public street.* In the opinion in that case it was said that the compensation due to the owners was ascertained by the report of commissioners, and the report was duly confirmed. Nothing remained to be done, except to make that compensation in money, and this the charter required the common council to make within one year after the amount was ascertained. No doubt that time was given for the purpose of enabling the city government to collect the money by local assessment on the persons or property benefited by the improvment; but the right to proceed and make this collection, or

---

* In Warren *v.* City of Buffalo it appeared that the common council of the city of Buffalo, having instituted proceedings to take certain land of the plaintiffs, Edward S. Warren and others, for a public street, under the charter of the city, *L.* 1853, c. 230, the commissioners of highways reported an award of four thousand six hundred and seven dollars to plaintiffs for the land proposed to be taken ; which report was duly confirmed by the common council. The city, however, never took possession of the property, nor paid the award ; but abandoned the proceedings. Thereupon plaintiffs brought this action in the superior court of Buffalo, to recover the amount of the award. That court held that when the report of the commissioners was duly confirmed by the common council of the city, the right of the owners of the land sought to be taken, to the compensation awarded, became fixed, and the common council as to time had no discretion left to be exercised by it. [Upon this point the counsel for plaintiffs, on the appeal in this court, cited Hawkins *v.* Trustees of Rochester, 1 *Wend.* 53. In the matter of Dover-street, 18 *Johns.* 506. Stafford *v.* Mayor, &c. of Albany, 6 *Id.* 1; S. C. on appeal, 7 *Id.* 541.] The superior court further held that in consideration of the grant to defendants

the neglect to exercise it, did not discharge the duty of paying the owners of the land, or extend the time for making such payment. The charter, in section 17 of title 8, provides that the amount of compensation due to the land owners shall be legally assessed, but section 18 declares, in effect, that, as between such owners and the city, the compensation shall be a general debt or charge. This is the effect, because the money is payable peremptorily within the time specified, and out of no particular fund.

The second ground of nonsuit urged was that the plaintiffs' remedy was by a mandamus to compel the common council of the defendant to proceed and make the contemplated assessment, and out of the fund thus received, to pay and discharge the award made to the testator. A like ground was taken in the case of Warren, *supra*, and it was then thus answered by this court: " It has been also said that the remedy of the plaintiffs is by mandamus, and not by suit. Undoubtedly if the sum in controversy was payable only out of the local assessment fund, a mandamus would lie to compel that assessment to be made, and an action probably would not lie until the money should be collected on the warrant. But the plaintiffs have nothing to do with the local tax. The duty owing to them is simply the payment of a sum of money, and the action

---

of the right of eminent domain, with ample power to ascertain the *compensation* to be made under the constitution, and to assess and collect the moneys required to pay it, the defendants contracted with the sovereign power to pay to the owner of the land taken the just compensation awarded him, within one year after the confirmation of the report of the commissioners. And that this agreement inured to the benefit of whoever was entitled to compensation, so that he could maintain an action for its breach. Citing Weet v. Trustees of Brockport, 16 *N. Y.* 161; Stafford v. Mayor, &c. of Albany, 6 *Johns.* 1; 7 *Id.* 541.

Upon judgment entered for plaintiffs being affirmed, at general term, defendants appealed.

*George Wadsworth,* for defendants, appellants.

*A. P. Nichols,* for plaintiffs, respondents.

This court affirmed the judgment. The grounds of its decision appear in the case in the text.

of debt was always the appropriate remedy for the enforcement of such a duty."

It is urged by the respondent's counsel, that there is no proof in the record or otherwise, that one of the city assessors was appointed one of the commissioners, in accordance with the directions of the city charter, and again he urges that the provision of the charter requiring the appointment of one of the city assessors on the commission is unconstitutional. In support of this latter position, he argues that the constitution provides that the compensation to be paid for land taken for public use shall be ascertained by a jury or by three commissioners appointed by a court of record. That it was intended to give parties the right to go before an unbiased court and submit their objections to any person proposed, and to secure the appointment of fair and disinterested appraisers. That the legislature has no right, therefore, to direct that any particular individual shall be appointed, and thus usurp the powers given to the court. In this view of the constitutional provision, the counsel for the respondents is undoubtedly correct. The legislature clearly had no power to say who, or what class of persons, should be appointed commissioners. In the matter of the opening of the Eleventh-avenue, Judge EDWARDS, at special term, in 1852, held that this provision superseded the requirements of the act of 1839, which directed the court to appoint one commissioner on the nomination of the common council of New York, and one on the nomination of the parties whose property was to be taken, and the third to be selected by the court; that the Constitution vested in the court, absolutely and without control, the appointment of the commissioners, and that the court had full power to select such commissioners as in its judgment were most fit, without reference to the nominations of the common council, or the parties in interest. Such had been the ruling of the court in other cases, and that is regarded as the settled practice in the appointment of commissioners in the first judicial district. *Davies' Laws*, p. 1244. It may be conceded, therefore, that the provision in the defendant's charter requiring the court to appoint one of the city assessors as one of the commissioners, is repugnant to the Constitution, and, therefore, void and of no obligatory force upon the court;

Ganson v. City of Buffalo.

yet still it is not perceived how this objection can be availed of, or is at all appropriate, if the position of the counsel is true, that there is no proof in the record or otherwise that one of the city assessors was appointed one of the commissioners. If the provision of the charter requiring one of the assessors to be appointed was unconstitutional and void, surely the proceedings are not invalidated by the omission to prove that such illegal and void appointment was made. The averment in the complaint that one of the commissioners was a member of the board of assessors, was denied by the answer, and no proof was offered to sustain the averment, and there was no finding on the subject. But if the averment is to be taken as a fact, it is not perceived how it renders the appointment of this particular commissioner invalid. There is no prohibition in the constitution against the appointment of one of the city assessors; and, upon the argument of the defendant's counsel, sustained by abundant authority, it is manifest that the discretion of the court as to whom it should appoint commissioners could only be restrained or qualified by a constitutional limitation. It follows, therefore, that if the court in its discretion thought proper to appoint one of the city assessors a commissioner, it would have been perfectly legal and proper so to have done. By the charter of the defendant as it existed at the time this award was made and confirmed, it was made the duty of the defendant absolutely to pay the same within one year after the amount was ascertained. This ascertainment could only be definitely determined when the report of the commissioners should be confirmed. The amount, then, was to be paid within one year after the confirmation of the report. A similar provision exists in the laws relating to the taking of property for public use in the city of New York. There the functions of ascertaining the amount of compensation to be made to the respective owners of the lands taken, and the assessment of the total amount so ascertained, together with the costs and expenses of the proceedings, are united in one set of commissioners; and they as well make the awards, as make and impose the assessments. Upon the confirmation of their report the awards are ascertained and a fund provided for their payment. The statute also declares that the corporation of that city shall pay,

Ganson v. City of Buffalo.

within four calendar months after the confirmation of the report, the amount of such awards respectively, and in case of neglect shall be liable in an action to pay the same, with lawful interest from the time of such demand, with costs of suit. It has never been questioned there that such liability was absolute upon the corporation at the expiration of the four months from the confirmation of the commissioners' report, and that it was no answer to the demand or to the action that the assessment made had not been collected.

The liability of these defendants, therefore, is clearly the same as that of the corporation of the city of New York, and is absolute, after the expiration of the times respectively specified for the payment of the awards. As this case is clearly distinguishable from the case of McCullough v. Mayor, &c. of Brooklyn, 23 Wend. 458; and Gerald v. City of Brooklyn, decided in this court at June term, 1863.* Both these cases were actions to recover awards made for lands taken for public use, and the charter of the defendants required an assessment to be made for the payment of the awards. But the sums awarded for damages were not declared to be debts against the city, nor was it made the duty of the corporation to pay the money. It was held in those cases that the only duty or obligation resting upon that corporation was that of putting the necessary machinery in motion according to the requirements of the statute. It was said that if the common council had neglected that duty,

---

* GERALD v. CITY OF BROOKLYN, was an action brought by Hannah Gerald, executrix, &c., and others, in the supreme court, against the city of Brooklyn, to recover the amount due upon an award to plaintiffs' testator, reported by the commissioners and confirmed by the county court of Kings county, for lands appropriated by defendant for a public improvement.

On the trial plaintiffs' counsel asked the court to rule, "that in and by the confirmation of the commissioners' report, the liability of the city for the payment of the award became determined and fixed, and bound the city to pay the same from that date," which the court refused; but ruled that "if the city was liable, it would be only for neglect and want of due diligence in collecting the assessment for said improvement, and the plaintiffs would then be entitled to interest only from the time of the demand of the award."

There being no proof of neglect on the part of the city to take the ne-

or had been wanting in diligence, an action on the case might lie in favor of any one who, like the plaintiff, would be entitled to the money when collected. But it was suggested that a *mandamus* would be a more appropriate remedy.

By an amendment to the charter of the present defendant, made in 1859, the moneys payable by the city for awards of lands taken, instead of being payable within one year after the *ascertainment* of the amount thereof, were thereafter payable within one year after the assessments to be made for the payment thereof. The right of the plaintiffs' testator to this money, and to compel its payment by defendant, was vested and complete at the expiration of a year from the ascertainment of the amount. The section of the defendant's charter was not repealed, and, therefore, the reasoning of COWEN, J., in Butler *v.* Palmer, 1 *Hill*, 324, is inapplicable in this instance. It may well be held that the amendment of 1859 applied only to awards made after the passage of that act. It did not in terms apply to those made and ascertained previous to its passage, and therefore should not have that effect. An act of the legislature, as a general rule, is to have no retrospective operation, and BLACKSTONE, in his commentaries, treats it as a just principle that all laws are to commence *in futuro* and operate prospectively. 1 *Blacks. Com.* 44.

In Dash *v.* Van Kleeck, 7 *Johns.* 477, it was held, after much deliberation and an extended discussion, that an act of the legislature is not to be construed to operate *retrospectively,*

---

cessary steps for the collection of the assessment, the complaint was dismissed.

The judgment entered accordingly was affirmed at general term; where the primary and general liability of the city was repudiated and denied upon the authority of the following cases: McCullough *v.* Mayor, &c. of Brooklyn, 23 *Wend.* 458; Lake *v.* Trustees of Williamsburgh, 4 *Den.* 520; Hunt *v.* City of Utica, 18 *N. Y.* 442. Plaintiffs appealed.

The cause was submitted in this court.

*L. I. Lansing,* for plaintiffs, appellants.

*John G. Schumaker,* for defendant, respondent.

THIS COURT affirmed the judgment on the grounds above stated.

so as to take away a vested right, and that it was a principle of universal jurisprudence, that laws, civil or criminal, must be prospective, and cannot have a retroactive effect. The language of Judge THOMPSON, in that case, is pertinent to that now under consideration. He said: "Giving to the act a retrospective operation would manifestly be productive of wrong and injustice, for it not only takes away a vested right, but punishes and endamages the plaintiff, in the payment of costs. . . . . It can never be presumed from the general words of this statute, that the legislature intended that it should work such injustice. Nothing short of the most direct and unequivocal expressions would justify such a conclusion. The best settled rule of construction given by the English courts to the statute of frauds (29 *Car. II.* c. 3) goes strongly in corroboration of the interpretation I have given to the act before us. The language of that statute is, 'that from and after June 24, 1677, *no action shall be brought* whereby to charge any person upon an agreement in consideration,' &c.' Yet it has been uniformly held that the act would not retrospect so as to take away a right of action to which a party was before that time entitled, but applied only to promises made after June 24, 1677. 4 *Burr.* 2560; 2 *Shower,* 17; 2 *Mod.* 310; 1 *Vent.* 330."

It must, therefore, be held that the amendment of 1859 did not take away the right of action of the plaintiff's testator, which was vested and complete before that amendment was made.

It is further contended, that the whole proceedings of the common council of the defendant were void for want of authority, in this, that there was no application of a majority of the property holders, resident of the city of Buffalo, and liable to be taxed or assessed for the proposed ship canal, to the common council, for the construction thereof, or the taking and appropriating of the land necessary to lay out the same; and that without such application the common council had no power or authority to take the said land or proceed in the construction of the said canal. The provisions of section 19 of the defendant's charter, requiring an application of a majority of the property holders, apply only to the improvements mentioned and enumerated in that section. They are the grading,

building, paving, repairing, macadamizing or graveling any street, alley, lane or highway in said city, or the construction, relaying or repairing, any cross and sidewalks, drains, basins, canals, docks, slips, wharves, sewers and acqueducts therein. It is thus seen that these provisions contain no limitation upon the powers of the common council to take and appropriate the necessary land, which may be required for the laying out, widening, altering or straightening any street, alley, lane, highway, market ground, public ground, canal, basin, wharf or slip, conferred by section 6 of title 8. The two proceedings are entirely independent of, and unconnected with each other, and that authorized by section 6 can be initiated on the mere motion of the common council, while the improvements called for by section 19 must have for their basis an application from a majority of the property holders directly interested therein and resident of the city.* There is no force, therefore, in the objection that the resolution to take the lands of the testator of the plaintiffs and others, for the construction of the ship canal, was void, because not asked for by a majority of property holders interested therein. It may well be that the common council could not proceed to construct said ship canal without such application, but I have no doubt such application was not called for, or required, before they could determine to take the land for that purpose.

The judgment should, therefore, be affirmed.

A majority of the judges concurred.

Judgment affirmed, with costs.

---

* See, for the application of this rule, the cases of Hatch *v.* City of Buffalo, 38 *N. Y.* 276 ; and Allen *v.* The same, *Id.* 280.