Cumming *v.* The Mayor, &c. of Brooklyn.

direct that such increased value, as reported by the master, be first paid to Sawyer out of the proceeds of the master's sale, after deducting therefrom, by way of offset, the costs allowed to the complainants, by the decree.

With this modification, the decree of the vice chancellor is affirmed with costs.

---

## T. and J. P. CUMMING *vs.* THE MAYOR, ALDERMEN AND COMMONALTY OF BROOKLYN.

Where the corporation of the city of Brooklyn contracted with the complainants, to grade and regulate one of the avenues of that city, at a specified price, to be paid for out of the moneys which were to be collected for an assessment made for such improvement; *Held,* that the corporation had the power to make such a contract, and that it was the duty of its officers to see that a proper assessment for the improvement was made, and that the money was collected thereon, and paid over to the contractors, within a reasonable time after the completion of the improvement.

And the officers of the corporation having unreasonably neglected to compel a proper assessment to be made, *Held,* that the complainants were entitled to payment, out of the general funds of the corporation; and that such general funds be reimbursed, out of the proceeds of the assessment when made.

Where the defendant neglects to raise any objection to the jurisdiction of the court, until after the testimony in the cause has been taken, it is too late to raise the objection that the complainants had an adequate remedy at law.

THIS was an appeal, by the defendants, from a decree of the late assistant vice chancellor of the first circuit. In August, 1836, the complainants contracted with the corporation of Brooklyn, to grade and regulate Hamilton avenue, from Clinton-street to the Gowanus bridge, in the sixth ward of the city, to be completed by the first of March, 1837; for which the corporation was to pay them at the rate of twenty-one dollars a foot, when the money should be collected from the assessment which was to be made for such improvement. By a subsequent agreement, the price was reduced $6,75 a foot, in consequence of an alteration of the grade of the avenue. The work was completed according to the contract, and was approved by the

corporation; and amounted to about $22,000. In March, 1837, the corporation ordered the assessors to make an assessment for the improvement. The assessors accordingly made an assessment, of the expense of the improvement, upon the several persons by name who were supposed to be owners of property benefitted by the improvement. But, in their return of the assessment, they gave no description of the property which was benefitted, and which they intended to assess. In October, 1837, a warrant was issued to the collector to collect the several assessments from the owners assessed. But only about $2000 was collected and paid over to the complainants; and the residue of the assessments the collector returned as uncollectable from the goods and chattels of the persons assessed. In May, 1838, the corporation advertised the property, intended to be assessed, for sale, but could not obtain bids to the amount of the respective assessments; and the corporation subsequently advertised the property again for sale, with a similar result.

In August, 1839, the complainants filed their bill in this cause, stating the making of the contract, and the performance thereof on their part; that they had only received about $2000 for the work, and that the defendants had refused payment of the residue until the money should be collected by an assessment upon the property benefitted. The bill further charged that the understanding of the parties to the agreement was, that as soon as the work was completed, the corporation would cause an assessment to be made and collected for the expense of the improvement, and paid to the complainants; but that the defendants had neglected and refused to cause an assessment to be made and collected according to law. And the complainants insisted that, by the contract, the corporation was bound to collect the amount of the expense, by assessment, as soon as the work was done, or to pay them out of its other funds. They therefore prayed that the corporation might, by a decree of this court, be ordered to proceed to collect the moneys by assessment, and to pay them the amount due, with interest and costs, or to pay them out of the general funds of the corporation, and for general relief. The defendants, by their answer, admitted the ma-

Cumming v. The Mayor, &c. of Brooklyn.

terial facts stated in the bill; and they set out the assessment actually made, the issuing of the warrant to collect the same, after it had been confirmed by the common council, the return of the collector, the subsequent attempts to sell the lands, and a similar attempt subsequent to the filing of the complainants' bill, but alleged that no one would bid at the sale. The cause was heard upon pleadings and proofs; and the assistant vice chancellor decided and decreed, that the corporation was indebted to the complainants for so much of the sum reported to be due on the 5th of September, 1837, as had not been paid, and that the complainants were entitled to interest thereon from the last mentioned time; and that the corporation should elect within sixty days to make a new assessment, or to have the former assessment amended; and that in that case, time should be given to the defendants, for paying the amount due to the complainants, until the amount could be assessed and collected according to law; with leave to the complainants to apply for further directions, if the amount was not collected without unreasonable delay. And he also decreed, in case the corporation should not so elect, that the defendants should pay the complainants the sum of $20,670,90, which remained due to them, with interest from the date of the decree; and that the defendants should pay the complainants' costs.

*N. F. Waring & G. Wood,* for the appellants. The complainants have a complete remedy at law, for any damages they have sustained. The defendants being mere trustees, for the benefit of the owners of the land to be assessed, are not liable, except for malfeasance or misfeasance. The assessors are a body independent of the common council, and the defendants are not answerable for their acts. The defendants had no authority, by their charter, to enter into a contract in this case, by which the general treasury of the city would be charged. The act incorporating the city of Brooklyn is a public act, and the complainants are bound to take notice of its provisions. The contract; being construed in reference to the charter, (which, so far as it bears upon the contract, enters into and becomes part thereof,)

Cumming v. The Mayor, &c. of Brooklyn.

is a contract to pay out of the moneys raised, and paid into the treasury, from the assessments upon the owners on the avenue; and until the moneys are so raised, there can be no liability on the part of the corporation. The complainants have failed to show performance on their part. Under the circumstances of this case, if there can be any legal liability to the complainants, there should have been a demand before suit brought.

*B. F. Butler & D. B. Ogden*, for the respondents. The contract between the complainants and the defendants, binds the latter to pay, ultimately and absolutely, the full amount of the work done by the complainants in pursuance of the contract; and the reference to the assessment in the contract merely postponed the time of payment until an assessment, to be imposed and proceeded in with due diligence, should be concluded; when the money due to the complainants, (whether collected from the assessment or not,) was to be fully paid to them. The contract, as so construed, was within the scope of the powers of the defendants, and is binding upon them. Even if the contract makes the amount due to the complainants specifically and exclusively payable out of the money to be collected by assessment, still the decree appealed from is right, and should be affirmed. The defendants, by postponing the collection of the assessment, or enlarging the time, within which the assessments were to have been paid, assumed the immediate payment of the debt. So the collection of the assessments, or some of them, having been prevented by the laches and neglect of the defendants, they became bound to pay the complainants immediately. The possibility of the complainants being never paid, by the assessment to be imposed by the corporation, was unforeseen by both parties, and the assessment having failed to produce sufficient to satisfy the amount due to the complainants, this court will compel the defendants to collect the balance within a reasonable time, by a new assessment, or to pay the amount, out of the general funds of the corporation.

THE CHANCELLOR. The appellants having the general powers of a corporation, were competent to enter into a general contract with the complainants to grade the Hamilton avenue, between the two points indicated, and to pay them for so doing. The fortieth section of the city charter gives a general authority to the common council, to cause the streets and avenues and squares, in the first seven wards of the city, and the fire and watch district, to be graded, levelled, gravelled, paved or macadamised, and to cause cross-walks to be made, and drains and sewers to be constructed. And there is nothing in the charter which prohibits the corporation from entering into general contracts for the making such improvements. It is true, the same section of the charter which authorizes these improvements to be made, directs the expense thereof to be assessed upon the owners and occupants of the lands and premises benefitted thereby, in proportion to the amount of such benefit. And as the amount of funds which the corporation is annually authorized to raise, for general purposes, is limited by law, it is a prudent precaution in making contracts for grading and improving streets, &c. to regulate the mode of payment in such a manner as to give a reasonable time to assess and collect the amount from the owners of the property benefitted, before the payments for the labor shall be demandable from the corporation. The assessment of the expense, as a local tax, is not however a restriction upon the power of the corporation so as to require it to contract only for payments out of that particular fund. But this local tax is a fund which has been provided by the legislature to reimburse the corporation for the expenses of an improvement which it has either paid or become liable to pay. And if the corporation, voluntarily, or by compulsion, pays such expenses out of its general funds, any citizen who pays taxes may apply to the proper tribunal to compel the corporation to cause the general fund to be reimbursed, by an assessment and collection of the expense of such improvement from the owners of the property benefitted, or out of the property itself, as authorized and directed by the charter. The legislature never contemplated the contingency, that the expense of an improvement would be more than the

whole value of the property which was to be benefitted by such improvement; and therefore have not provided for such a case. And as the expense is all to be assessed upon the owners of property benefitted by the improvement, in *proportion* to the amount of such benefit, whether the benefit is more or less than the amount of the assessment, it is hardly possible to conceive a case in which rational men would attempt an improvement, of the character specified, where the whole property of the city which was in any degree benefitted by the supposed improvement was not sufficient to pay the expense. The case is different where valuable property is taken for the opening or widening a street; which property is to be paid for by the owners of adjacent lands within certain specified limits, in addition to the expense of grading and paving such street.

In the present case, there is no evidence that the lands benefitted by the local improvement are not in fact worth enough to pay the expense. For the assessment has not been made in such a way as to make the attempts to sell any test of the value of the lands which the assessors supposed to be benefitted. The statute makes the assessment a charge upon the personal estate of the owner of the lands benefitted; and if the amount cannot be collected of him, the land itself is to be put up and sold to pay the amount. But to enable the corporation to resort to the lands for payment, it is absolutely necessary that the assessors should specify, in their assessment, the particular lands on which the assessment is made, either by the numbers of the lots, or by some other known designation; so that the purchasers at the corporation sale may know, from the description contained in the return of the assessors, the extent and boundaries of the property which was intended to be assessed. In other words, the property must be so described, in the return of the assessors, that the purchaser will be enabled to locate the premises, without the necessity of inquiring of the assessors what property they intended to tax. Here, a certain number of feet and inches is given, on the avenue, as the property of an individual named, but without specifying the boundaries on either side thereof, or stating how far it extends back from the avenue. The vice

chancellor was therefore right in supposing that the common council had neglected their duty, in not causing a proper assessment to be made; and that this imperfect assessment ought not to have been confirmed, as it could not constitute a valid lien upon the lands intended to be assessed, for want of a sufficient description. It is not necessary, therefore, to determine what would have been the legal effect of the contract with the complainants, if it had, at the time when the assessment ought to have been made and collected, been impossible to make a proper assessment, and to collect the same from lands benefitted by the improvement, or from the owners of such lands.

The fair construction of the contract is that the complainants shall be paid for their labor when the assessment shall be made and collected, and that the corporation will cause such assessment to be made and collected without any unreasonable delay, after the work is done. And as the defendants had violated their contract, by not having a proper assessment made without, unreasonable delay, I think the complainants were entitled to a general decree, against the corporation, for the payment of the amount due, with interest and costs. The defendants, therefore, had no right to complain that the decree gave them a further time to collect the money, by a new or amended assessment, instead of directing the corporation to pay immediately.

Although the common council may not have a control over the assessors, directly, they were bound by their contract, to have the assessment made; and if the assessors refused to do their duty, the corporation should have applied to the supreme court for a mandamus, to compel them to make a proper assessment, instead of confirming an invalid one. The order of the common council was all the evidence necessary to show the performance of the contract on the part of the complainants; and the corporation is bound by the acts of its officers in the discharge of official acts within the scope of their powers. I am inclined to think, the complainants could have recovered at law upon this contract, and that if that objection had been taken at the proper time it would have been fatal. It was too late, however, to ask the court to turn them around to a new suit, at the hear-

ing, after the defendants had suffered them to go to the expense of taking proofs, without objection. The decree appealed from must, therefore, be affirmed, with costs.