Bacon, J.
The defendant in this case is a municipal corporation, deriving all its powers from, and exercising its functions in accordance with, the charter which constitutes its organic and fundamental law. The principle is too familiar and elementary to require the citation of authority in its support, (although the books abound with cases which establish the doctrine,) that such a corporation possesses and can exercise no powers except such as are expressly granted by its charter, or such as are necessary to carry into effect the granted powers.
The agency through which the corporation mainly acts, is the common council of the city, a body constituted by the charter, and having certain specific duties cast upon, as well as restraints thrown around it. It is an obvious result of this organization, that the municipal body, which is the corporation, can only be bound or affected where the common council, the subordinate agency through which it ordinarily acts, exercises authority in conformity with the law of its creation, and never can be bound *395 in any case where the council acts in violation of any restriction which the organic act imposes upon it.
It is perhaps a common, but is nevertheless a very manifest error, to suppose that the common council of a city is a sort of independent body, having, to some extent, inherent executive as well as'legislative powers, not entirely subordinate to the law which creates and limits their authority, and consequently, that they, to some undefined extent, are “a law unto themselves” as well as to those with whom they are dealing. Such a doctrine has no support from principle or authority. If a corporation, when prosecuted for an act of its agents, (the common council for the time being, of a city,) are to be met by such a plea, the doctrine of estoppel will have reached an extent little dreamed of heretofore, and there would be no conceivable stretch of power on the part of that body for which the corporation would not be held responsible. On the contrary, the true principle, as stated by Nelson, J., in Cuyler v. Trustees of Rochester, (12 Wend. 168,) is that “the charter prescribes the powers of the trustees, beyond which they cannot go. If they do, they act as individuals, and not in the character of trustees, and their proceedings, of course, are inoperative and void.” In suits against corporations of a municipal character, they, like all other principals, may defend themselves on the ground that the act by which they are sought to be made responsible, was an act done without their authority. The same doctrine is upheld and enforced in the judgment in the court of appeals, in Mayor of Albany v. Cunliff, (2 Comst. 178,) where it is held that the assent of the common council to an act beyond their authority, can never estop the corporation from raising the objection. The ofiicers act for their principals, and are of course limited, in their legitimate action, to the powers conferred by the charter creating them. If the council cannot bind the corporation expressly, they cannot conclude them by way of estoppel. “This rule,” says the court, “although it may sometimes operate harshly, is a safe and sound one, and should be applied uniformly to all persons acting in a representative capacity, where they travel beyond their legitimate powers.”
*396 Bearing these principles in mind, it is important to inquire what powers are given to the common council of Utica by the charter of the city, in respect to the work for the execution of which the claim in this suit arises, and also what control the council are permitted to exercise over the finances of the corporation. Upon this branch of the inquiry it will be seen, by the various provisions of the act incorporating the city, and the amendments thereto, that the charter proceeds upon the idea of separating the finances of the city into distinct funds, eash having its specific office to perform, and so segregating them • that one shall in no contingency be blended with or merged in the other. Thus by sections 40 and 41 of the act to amend and consolidate the several acts relating to the city of Utica, (Laws of 1849, p. 249,) the council are empowered to raise, by a general tax upon all the taxable inhabitants of the city, a specific amount, and the objects to which the same is to be devoted are enumerated in the section. These objects are all of a general and public nature, in which all the inhabitants are supposed to have a common interest, and to which all are bound to contribute, in proportion to their means and their liability to taxation. In respect to these as to other funds of the corporation, the treasurer is required to keep an accurate account of all receipts and expenditures, so as to exhibit the amount paid under each particular class of purposes for which money shall be raised. This fund, therefore, never can be rightfully diverted from, or appropriated to, any other objects than those specifically enumerated in the charter. (See § 21.) But in respect to local improvements, such as paving streets, making side walks, &c., which are necessarily limited to particular localities, and which are for the special benefit of those in the immediate vicinity thereof, inasmuch as they derive the chief advantage, upon them and their property, which is supposed to be enhanced by the improvement, is cast the burden; and this class falls within other provisions of the act, and is fully provided for in another title and by a. distinct section of the act. By section 66, the power is given to the council to cause any street in the city to be graded, leveled, paved or repaved, <fcc. The manner *397 in which the council is to proceed is minutely pointed out in the remainder of the section, and to provide the necessary funds to defray the expense of such improvements, it is expressly provided that the same shall be assessed upon each foot front of the lots upon both sides of the street which has been thus improved. By the 70th section, all moneys received upon these assessments are to be kept by the treasurer as a distinct fund, and these moneys are to be drawn only by orders expressly directing their application to the expense for which the assessment was made. And by the next section (§ 71) no moneys belonging to the city (and which constitute its general, in contradistinction from its specific funds,) shall be paid out by the treasurer, upon orders drawn against moneys to be raised upon an assessment. And as an additional safeguard and restraint upon the council, they are by a subsequent section prohibited from contracting any obligation or borrowing any money, except for the purpose of anticipating for a short period the collection of the ordinary tax of the current year. (See § 99.) It will thus be seen that not only has a precise and definite provision been made for this very case, but the most solicitous and industrious care has been used to provide a specific fund, and to guard the other funds of the city from being encroached upon by appropriations for a foreign and improper object.
It follows, therefore, that the council, if they had attempted it, had no power whatever to bind the city to pay for the work in question in this case, out of the ordinary revenue of the city, or forthwith upon its completion. All the duty that rested upon the common council, and I may add, all the power they possessed, was to cause the expense of the work to be assessed and means taken for its collection in the manner provided by the charter, and to apply the money, when received, to the payment of the contractor. There is no pretense that this duty has not been performed, with all requisite promptness and fidelity. Immediately upon the completion of the improvement, which was in November, 1855, the amount due for the work was certified by the city surveyor, presented to the council, referred to the appropriate committee, who, at *398 the next meeting of the council, reported in favor thereof, and allowed the account, payable when collected by assessment. The whole expense of the work, including the assessment, was then ascertained and an assessment list prepared and filed with the treasurer, on the 10th of December thereafter, and no voluntary payments having been made by the parties assessed, the treasurer issued his warrant for the collection of the tax, in February, and the same was in the hands of the collector, unreturned and unreturnable when the suit was commenced. This shows a case of due diligence on the part of the council in attempting to fulfill the duty enjoined upon them by the charter. If they had unreasonably neglected or refused to make the assessment, or take the necessary steps for the collection of the tax, or refused to pay over the money when collected, an action on the case might be sustained against them, and very probably by a mandamus the city could be compelled to take the appropriate measures for raising the money and discharging the indebtedness. (See McCullough v. Mayor &c. of Brooklyn, 23 Wend. 458.) No other duty, it is said in this case, (which in its features is strikingly analogous to the one at the bar,) rests upon the corporation than that of putting the necessary machinery in motion, according to the requirements of the statute. (See also Lake v. Trustees of Williamsburgh, 4 Denio, 520.)
The only authority which has been invoked in opposition to these conclusions is the case of Cumming v. Mayor &c. of Brooklyn, (11 Paige, 596.) As I understand that case, it contains no doctrine which will enable the plaintiff to recover upon the case made by him. Without stopping to remark upon the important consideration that the charter of Brooklyn (Laws of 1834, p. 90, et seq.) contains no such special provisions as does the charter of Utica, in regard to the collection, keeping and disbursement of specific funds, and restraints upon the power of the council to order payments to be made therefrom, it is sufficient to say that the decision was put upon the express ground of a breach of duty on the part of the council, in not taking the necessary steps to cause a legal assessment *399 to be promptly made and collected. This duty they not only unreasonably delayed, but in attempting to execute it performed the office in such a loose and perfunctory manner that the assessment wholly failed to reimburse the claimant. In deciding the case, the chancellor says: “The fair construction of the contract is that the plaintiffs shall be paid for their labor when the assessment shall be made and collected, and that the corporation shall cause such assessment to be made and collected without unreasonable delay. As the corporation had violated their contract by not having a proper assessment made without unnecessary delay, .the plaintiffs were entitled to a decree against the defendants for the payment of the amount due.” Upon no other principle can the decision be upheld, and if it attempts to establish any thing beyond this, it is not the law of the land as applicable to this case. Ho such breach of duty existed, or is alleged, on the part of the defendant, and without it no liability whatever attaches to the corporation.-
This view is decisive of this cause, and if my conclusions are sound, shows that upon the allegations and proofs in this action the plaintiff cannot recover. But I think it equally clear, that in this case the council never undertook to transcend their power, and have made no contract or engagement by which the corporation were bound to pay the contractor absolutely upon the completion of the work, or out of general funds belonging to the city. By looking at the evidence as it is spread out on the record, it will be seen that the council commenced the contemplated improvement under the 66th section of the charter, and have proceeded throughout in accordance with its provisions. They published proposals and a plan of the work, which had been filed with the city clerk, containing all the specifications required, and stated therein explicitly, that “ the expense thereof was to be assessed pursuant to the 66th section of the city charter, and the acts amending the same.” In the proposal which the contractor made, he offered to do the work upon certain specified terms, “according to plans and specifications thereof, on file with the city clerk.” In accepting the proposal and directing the work to be done, which the *400 council did, by an ordinance duly passed, they again state, in the resolution and order, that the expenses are “ to be assessed pursuant to the 66th section,” &c., and in finally auditing and ascertaining the amount of the account, they add that it is “ payable when collected by assessment.” These proceedings and documents constitute the contract between the parties, and it seems to me quite clear, that taken together, they show conclusively that the work was undertaken and prosecuted to completion under engagements in strict conformity with the. charter on one side, and a full understanding and acquiescence therein on the other. It is a familiar principle, that where, in an instrument between parties contracting with each other, a reference is made to another which contains conditions and qualifications in regard to the subject matter about which they are contractingj the latter shall be deemed incorporated with the former, and be taken as a part of the contract between the parties. A reference to a provision in a statute pertaining to and regulating the subject, in respect to which a party is about to contract, comes within the same principle. It is as if the law were written in and formed an integral part of the contract which the parties have undertaken to enter into; it interprets its provisions, and is equally binding upon both. This being so, and conceding, as we must, upon this case, that the defendant has performed the whole duty which the charter imposes upon the council, both in respect to the prompt assessment of the tax, and the necessary measures to insure its collection, no right of action whatever exists against the corporation.
I should deeply regret the necessity of arriving at the conclusion to which this discussion has conducted me, were the result to be the loss to the contractor in this case, or his assignee, of the hard earned compensation to which he is justly entitled. That consequence, however, will by no means follow. The council have performed their duty by levying the tax and putting in motion the proper machinery to ensure its collection. There is indeed an allegation in the complaint to the effect that the improvement is one the common council had no *401 right to order, and that they had no authority to assess or collect the expenses of the work. If there had been any proof offered to sustaip this allegation, the consequences might have been as fatal to the plaintiff’s right of action, as the pleader must have assumed it would be to the defense. But it is sufficient that no evidence was given upon the trial upon this branch of the case, and we must assume, therefore, that the necessary funds will be ultimately raised through the assessment which has been made and ordered to be collected. If, however, there shall be found to be any legal impediments to raising the tax through the means now in operation, the city should in that event assume the burden, and by means of an extraordinary tax, for which the charter has made ample provision, or by a direct act of legislation, power must be obtained to raise the necessary funds. To this no fair minded citizen can object, if the assessment cannot be rightfully collected of the parties upon whom it has been imposed, or adequate means are not derived therefrom to pay a just debt, incurred in good faith, and equitably binding upon the city,
[Onondaga General Term,
October 6, 1856.
The judgment must be reversed and a new trial ordered, with costs to abide the event.
Pratt, J., and W. F. Allen, J., dissented to the proposition first discussed in the above opinion, but concurred in the result, upon the ground stated in the second proposition.
Judgment reversed.
Pratt, Bacon and W. F. Allen, Justices.]