## JULIUS SMITH, RESPONDENT, *v.* THE CITY OF BUFFALO, APPELLANT.

*City — liability of, to a contractor for a failure to compel an assessment to be made to raise the amount required to pay for the work done by him for it.*

Upon the trial of this action, brought to recover for several pieces of work done by the plaintiff's assignors, at defendant's request, in and about certain local improvements in the defendant's city, it appeared that the claims for work were duly presented to the common council of the city, who audited and allowed the same and ordered assessments to be made therefor at different times between the 2d of July, 1883, and the 15th of December, 1884; that no assessment was made up to March 27, 1886, at which time this suit was commenced.

*Held*, that as no excuse was shown for the delay of the assessors or the neglect of the city authorities to proceed against them on account of such delay, the question as to whether the delay was unreasonable was one for the court to decide.

The defendant's counsel claimed that the city was not liable for the neglect of the assessors, as they were not the agents of the city, but an independent board of public officers whose duties were prescribed by the legislature, and who acted not for the city but for the public at large.

*Held*, that it was not necessary to decide that question in this case, as it was brought for a breach of the duty which the city owed to the plaintiff, not only to set in motion the machinery which the charter provided for raising the needed funds to pay for local improvements ordered by it, but also to see that such machinery was kept in motion, and to enforce its power in that respect with reasonable diligence until the end was accomplished.

The defendant claimed that the plaintiff had failed to show that the claim upon which the action was brought was presented to the common council before this action was commenced, or, in other words, that as the plaintiff did not notify the common council that he claimed to recover the amount of the bills audited on the ground of the alleged neglect of the defendant, the provision of the charter, requiring all claims to be presented, prevented him from maintaining this action.

*Held,* that the claim was untenable; that as the claims for the work were presented as the statute required nothing more was necessary.

APPEAL from a judgment of the Erie County Court, entered on a verdict in favor of the plaintiff directed by the court.

*W. F. Worthington* and *Frank C. Laughlin,* for the appellant.

*Herman Hening,* for the respondent.

SMITH, P. J. :

Action to recover for several jobs of work done by plaintiff's assignors, at defendant's request, in and about certain local improvements in the defendant city. Claims for the work were duly presented to the common council of the city, who audited and allowed the same and ordered assessments to be made therefor, at different times between the 2d of July, 1883, and the 15th of December, 1884, inclusive. The gist of the action, as alleged in the complaint, is that the defendant neglected and refused to make or confirm the assessments ordered, or to pay for the work, or to make any provision whatever therefor, whereby the plaintiff suffered damage to the amount of said claims as audited, with interest on each from the date of its audit.

By the charter of the defendant, the expense of local improvements of the character of the work alleged in the complaint is to be defrayed by local assessments, and certain ordinances of the city provide that warrants in payment of work of that character shall not be drawn until the assessment therefor shall have been confirmed by the common council, and such warrants shall be made payable out of the fund when collected, or when the money is actually realized by the city. The counsel for the appellant contend that in view of those provisions the only duty of the city, in the first instance, is to put the necessary machinery in motion to raise the money by assessment. That position, in its literal sense,

may be conceded to be true, but if by it is meant that the city, by the discharge of the primary duty of ordering an assessment, is thereby relieved from its liability to pay the debt, the position cannot be maintained. It is not supported by the cases cited by the appellant's counsel. In *McCullough* v. *The Mayor* (23 Wend., 458) BRONSON, J., said : "If the common council has neglected that duty" (of putting the necessary machinery in motion) "or has been wanting in diligence, an action on the case would, perhaps, lie," etc. (P. 461.) In *Lake* v. *The Trustees, etc., of Williamsburgh* (4 Den., 520) which was an action on a warrant drawn by the trustees of the village upon the treasurer, the same judge remarked that the question whether the plaintiff had a remedy on the case against the trustees for a neglect of duty, did not arise on the bill of exceptions. (P. 525.) In *Buck* v. *City of Lockport* (6 Lans., 251) the claim in suit was presented to the common council of the city, and by them referred to their committee on accounts, and nothing further having been done with it, the suit was begun between seven and eight months after the presentation of the claim. There was a neglect of the primary duty referred to, but the case plainly indorses the principle, that for the negligence or unreasonable delay of the common council, or other authorized agent of the corporation, in any stage of its duty, the corporation is liable. Said JOHNSON, J.: "The corporation cannot thus" (by neglect to act) "keep its creditors at bay and then defend itself, on the ground that its own officers and agents have not done what it was their duty to do." (P. 255.) In *Richardson* v. *The City of Brooklyn* (34 Barb., 569); *Hunt* v. *The City of Utica* (18 N.Y., 442), and *Baker* v. *The Same* (19 id., 326) no negligence whatever was shown.

It has been held repeatedly that if the failure of the corporation to realize the fund is owing to its own neglect or unreasonable delay, it is liable presently. The case of *Cumming* v. *The Mayor, etc., of Brooklyn* (11 Paige, 596) is an authority in point for the present action. The corporation of Brooklyn contracted with the complainants to grade and regulate one of the avenues of that city, at a specified price, to be paid for out of the moneys which were to be collected from an assessment to be made for such improvement. The work was completed and approved, and in

March, 1837, the corporation ordered the assessors to make an assessment for the improvement. The assessors accordingly made an assessment of the expense of the improvement upon the several persons by name who were supposed to be owners of property benefited by the improvement. But in their return of the assessment they gave no description of the property which was benefited, and which they intended to assess. In October, 1837, a warrant was issued to the collector to collect the several assessments from the owners assessed. But only a small part of the assessments was collected and paid over to the complainants, and the residue of the assessments the collector returned as uncollectible from the goods and chattels of the persons assessed. In May, 1838, the corporation advertised the property intended to be assessed for sale, but could not obtain bids to the amount of the respective assessments, and the corporation subsequently advertised the property for sale, with a similar result. In August, 1839, the complainants filed their bill for relief, and it was held that it was the duty of the officers of the corporation to see that a proper assessment for the improvement was made, and that the money was collected thereon and paid over to the contractors within a reasonable time after the completion of the improvement, and that as the officers of the corporation had unreasonably neglected to compel a proper assessment to be made, the complainants were entitled to payment out of the general funds of the corporation, and that such general funds be reimbursed out of the proceeds of the assessment when made  That case was approved and followed in *Baldwin* v. *The City of Oswego* (1 Abb. Ct. App. Dec., 62). Upon the same principle proceed the cases of *Beard* v. *The City of Brooklyn* (31 Barb., 142); *Buck* v. *Lockport* (*supra*), and *Quin* v. *City of Buffalo* (26 Hun, 235). The principle recognized by those authorities, we think, is applicable to the present case. It appears that the common council seasonably audited and liquidated the claims in suit, after they were presented, and adopted resolutions ordering the requisite assessments to be made; but the assessors made no assessment, and no further action was taken by the common council or other city authorities in respect to the matter.

The defendant's counsel contend that the city is not liable for the neglect of the assessors; that the assessors are not the agents of

the city in respect to making assessments, but are an independent board of public officers, whose duties are prescribed by the legislature, and who act not for the city but for the public at large. In support of that position they cite the well-known case of *Maximilian* v. *The Mayor* (62 N. Y., 161) and many other analogous cases. To the cases cited may be added the recent one of *Heiser* v. *The Mayor, etc., of New York* (6 Cent. Rep., 35), in which it was held that the board of assessors of the city of New York did not act as the servants or officers of the city in performing the duties enjoined upon it by chapter 729 of the Laws of 1872 in relation to the improvement of the Eighth avenue in said city, but, as was said in the case of *The People ex rel. Negus* v. *Dwyer* (90 N. Y., 402), "the question in every case of such character depends largely upon its own peculiar facts, and is determined by considerations not usually common to them all." (P. 408.)

We conceive it needless in this case to determine whether the assessors of the city of Buffalo are to be regarded as the agents of the city in respect to making assessments as required by the charter. The plaintiff's action does not rest upon the theory that the negligence of the assessors is the negligence of the city. Its theory is, that it is the duty of the city, through its common council or other appropriate agency, not only to set in motion the machinery which the charter has provided for raising the needed funds to pay for local improvements ordered by it, but also to see that such machinery is kept in motion, and to enforce its power in that respect, with reasonable diligence, until the end is accomplished, and that for a breach of such duty the corporation is liable to a party injured thereby. That position, we think, finds support in cases already cited. In *Cumming* v. *The Mayor* (*supra*) Chancellor WALWORTH said : " Although the common council may not have a control over the assessors, directly they were bound by their contract to have the assessment made, and if the assessors refused to do their duty the corporation should have applied to the Supreme Court for a *mandamus* to compel them to make a proper assessment, instead of confirming an invalid one." In *Baldwin* v. *The City of Oswego* (*supra*) the defendant was held liable " on account of the neglect of its officers to enforce the legal instrumentalities provided for enforcing payment against the parties primarily chargeable with such payment."

By the charter of the city of Buffalo (chap. 519 of 1870), among the officers of the city to be elected are three assessors (tit. 2, § 1), who shall constitute a board of valuation and assessment, a majority being a quorum (Id. § 39), by whom all local assessments shall be made. (Tit. 6, § 2.) They are required to publish notice of completed assessment rolls in their hands the first week of each month (tit. 6, § 5), and to give notice that such rolls will remain in their office open for inspection and revision for ten days. At the expiration of that time, they are to deliver a copy thereof to the city attorney, when the functions of the assessors in regard to such roll appear to cease. The general duties of the assessors are prescribed by the charter. The details of their duties, where the charter is silent, may be prescribed by the common council, that body being vested with power to enact ordinances prescribing the duties of all officers or persons elected under the act. (Tit. 3, § 8.) The mayor is made the chief executive officer of the city (tit. 2, § 24); he is enjoined to see that the duties of the various city officers are faithfully performed (Id.); he has power to investigate their acts, to have access to all books and documents in their offices, to examine them and their subordinates on oath, and to suspend or remove such officers, whether they be elected or appointed, for misconduct in office or neglect of duty. (Id.) So that the agents of the corporation have ample power conferred by the charter to prevent the assessors from neglecting their duty, even if the latter are not to be regarded as the servants of the city. In addition, there is the authority suggested by the chancellor in the case of *Cumming*, to proceed against them by *mandamus*.

In respect to the negligence of the corporation there can be no question. The claims in suit were all presented to the common council and audited before the 15th of December, 1884, and no assessment had been made up to the 27th of March, 1886, when this suit was commenced. No excuse is shown for the delay of the assessors or the neglect of the corporation authorities to proceed against them on account of such delay. There being no dispute about the facts, the question whether the delay was unreasonable was for the court. (*Bowery National Bank* v. *Mayor*, 8 Hun, 224, and cases cited by BRADY, J., pp. 228, 229.)

The point is made that the plaintiff failed to show that the claim

upon which he seeks to recover was presented to the common council before the commencement of the action, or, in other words, that as the plaintiff did not notify the common council that he claimed to recover the amount of the bills audited, on the ground of the alleged neglect of the defendant, the provision of the charter requiring all claims to be presented, etc. (tit. 3, § 7), stands in his way. We think the position is untenable. The claims for the work were presented as the statute required, and nothing more was necessary. A complete cause of action having been made out the plaintiff was entitled to recover as damages the amount of the bills as audited, with interest on each from the date of its audit, and we understand the recovery to be on that basis.

It is unnecessary to decide whether the appellant's counsel are right in their contention that the testimony of the plaintiff's witnesses, as to the time within which the assessors could have made the assessment-rolls was improperly received, inasmuch as, independently of that testimony, the court was justified in holding, as matter of law, that there had been a lack of reasonable diligence.

The appeal-book shows that a motion for a new trial was made by the defendant upon a case and denied, but the order denying such notice does not appear to have been appealed from and it, therefore, stands.

The judgment should be affirmed.

HAIGHT and BRADLEY, JJ., concurred; BARKER, J., not voting.

Judgment and order affirmed.