STROUSSE v. BANK OF CLEAR CREEK COUNTY ET AL.

1. LANDLORD AND TENANT.

The lessee went into possession under a written lease, for a term of five years, which recited that it was renewable from time to time, at the election of the lessee, at an annual rental specified, and that any indebtedness by the lessor to the lessee should stand as an offset against rent due or to become due. The lessee remained in possession several years after expiration of the term with the consent of the lessor, but without a renewal of the lease. *Held,* that his oc-

cupancy after expiration of the term was that of a tenant from year to year; and that the fact that the lessor was indebted to him in an amount exceeding the rent did not defeat the right of the assignee of the lessor to recover possession on the ground of nonpayment of rent accruing after the tenant had notice of the assignee's acquisition of title.

2. PRACTICE—JURISDICTION.

Jurisdiction, the want of which may be raised at any time, is the general jurisdiction of the court over the subject-matter of the action.

3. SAME.

The plaintiff having brought the defendant into a court of equity, where, in self-defense, the defendant was compelled to set up the facts constituting its title, he will not be permitted, on appeal, to change holds by challenging the court's jurisdiction on the ground that there was an adequate remedy at law to settle the rights of the parties. When the court's equitable jurisdiction has been invoked, and the parties have submitted themselves thereto, a proper decree may be rendered, notwithstanding the plaintiff may have had an adequate remedy at law.

*Appeal from the District Court of Clear Creek County.*

Mr. J. C. HELM, Mr. D. J. DAVIES and Mr. W. T. HUGHES, for appellant.

Messrs. FILLIUS & DAVIS and Mr. THOMAS MITCHELL, for appellees.

THOMSON, J., delivered the opinion of the court.

Samuel Strousse brought this suit against Jesse M. Copeland, the Bank of Clear Creek County, and William A. Hamill to obtain a decree establishing his alleged possessory rights in certain real estate, and to enjoin the Bank of Clear Creek County from interfering with his possession. Demurrers were sustained successively to the plaintiff's original and amended complaint, an amendment to the amended complaint was filed, the defendant the Bank of Clear Creek County answered, the plaintiff replied, and upon the pleadings as they then stood the cause proceeded to trial. Judgment went against the plaintiff, and he appealed. .

On the 1st day of March, 1881, the defendant Hamill executed and delivered to the plaintiff the following instrument in writing:

"This agreement witnesseth, that the undersigned, William A. Hamill, of Georgetown, Clear Creek county, Colorado, lessor, lets unto Samuel Strousse, of the same town, county and state, lessee, his heirs and assigns, the north thirty-one (31) feet of lots five (5) and six (6), in block number eighteen (18), in the town of Georgetown, county and state aforesaid, for the term of five (5) years, and renewable from time to time, and for such periods as the said Strousse may elect, at the annual rental of fifteen hundred dollars ($1,500) per annum, payable monthly or annually, in advance, as may be elected by the parties hereto; the said lessor giving and granting unto said lessee the use of said premises free of rent for the first two (2) months as an inducement to said lessee to enter into and make this contract. And it is further agreed on the part of said lessor that any and all book accounts, unpaid accounts of any other nature or kind, including any and all moneys that may be from time to time due and owing said lessee by said lessor, or any other indebtedness now due, or which may yet become due, or accrue, or exist in favor of the said lessee, and owing from said lessor, shall at all times stand and be an offset against any and all rents due, accrued, or to become due; and that until all such indebtedness now due or which may hereafter become due, as hereinafter stated, are fully paid and discharged by said lessor, the rents of said premises may be and are a set-off, to be held as such by said lessee against said lessor, his heirs and assigns; and the said lessee is hereby authorized and empowered to enter on, take, hold, and possess said premises, in consideration of this inducement and on this understanding; and said lessee may, under this contract, hold and defend his possession for payment and settlement of any and all just claims and indebtedness that he may have against said lessor, and may defend the same against all claims of said lessor, or

any person or persons claiming or to claim by or through the said lessor, his heirs or assigns. Possession of said premises to be given on the 1st day of May, A. D. 1881.

"Witness my hand and seal this 1st day of March, A. D. 1881.

[Seal.]                         " WILLIAM A. HAMILL."

In pursuance of this contract, Strousse entered into the possession of the premises which it described. Afterwards, on the 1st day of January, 1885, Hamill executed and delivered to Strousse the following further contract:

"GEORGETOWN, COLORADO, January 1, 1885.

"I hereby let and contract with Samuel Strousse, as follows, to wit: Giving to him, his heirs and assigns, the possession, use and occupancy of certain premises adjoining the north thirty-one (31) feet of lots (5) and six (6), block eighteen (18), and heretofore occupied by the Merchants' National Bank, and being the north twenty-six (26) feet of lots three (3) and four (4), in block eighteen (18), town of Georgetown, Clear Creek county, Colorado, coterminous with a contract dated March 1, 1881, and given by me to him, of premises adjacent to those last above described, and upon the same terms and conditions; said Strousse, his heirs and assigns, to have, hold, use, and occupy said premises until full and complete performance by me, as provided for in said lease. For the use and occupancy of all the premises described in the lease aforesaid, as well as this one, said Strousse is to pay the sum of eighteen hundred dollars ($1,800) per annum, payable annually or monthly, in advance, as either of us may elect. Possession of the last premises mentioned in this lease to be given January 1, 1885.

[Seal.]                         " WILLIAM A. HAMILL."

Strousse then took possession of the real estate described in the last contract. He used and occupied the entire property continuously after taking possession, selling Hamill goods, and advancing him money from time to time. On

VOL. IX—31

January 1, 1888, Hamill, in settlement of the indebtedness then due from him to the plaintiff, made and delivered to the plaintiff his promissory note for $4,500, due one year from date, with interest at the rate of 12 per cent per annum, to be compounded at the same rate if not paid as it accrued. On December 15, 1890, Hamill executed another note to the plaintiff for one thousand dollars ($1,000), due in three months, with interest at the same rate, compoundable if not paid annually. On September 7, 1893, Hamill made a further note to the plaintiff for $272.77, due in three months, with the same interest, also compoundable annually. On May 1, 1890, one Harry C. Hamill gave the plaintiff his promissory note for $300, due in 90 days, with interest at the rate of 24 per cent per annum, to be compounded if not paid annually. The defendant Hamill afterwards assumed the payment of this note. On August 14, 1888, one William A. Hamill, Jr., executed his note to the plaintiff for $1,779, with interest at the rate of 2 per cent per month, to be paid annually or be compounded at the same rate. In August, 1891, the defendant Hamill assumed the payment of this note. On the 15th day of June, 1888, the defendant Hamill executed a conveyance of the real estate described in the two contracts to the defendant, Copeland, as trustee, to secure the payment of a note for $15,000, of the same date with the trust deed, with interest from date at 1 per cent per month, which note became the property of the Bank of Clear Creek County. In pursuance of the authority given by the trust deed, the defendant Copeland, at the instance of the bank, on November 19, 1894, sold the real estate described in the trust deed; the bank being the purchaser, and receiving a deed of conveyance of the land from the trustee on the same day. Afterwards the bank commenced proceedings for the possession of the property, which were pending when this suit was brought.

The contention of plaintiff's counsel is that the contracts have the effect of a mortgage upon the use and occupation of the premises, by virtue of which Strousse has the right to

continue in possession until such time as Hamill shall cease to contract indebtedness to the plaintiff in excess of the amount of the rents reserved. This theory is based on the provision in the contract that the lessee might hold and defend his possession for payment and settlement of the indebtedness, accrued or to accrue, against the lessor and all persons claiming under him; and, if we understand the argument, its effect is that, having taken the possession, the lessee was entitled to retain it as security for then existing debts and future advances, regardless of the term limited by the contract. Whether the language upon which counsel rely would, in any view, be susceptible of the construction which they give it, we need not inquire; because, in our opinion, the argument is effectually answered by the presence in the contract of a covenant for renewal. The first contract was a lease for a fixed term of five years, with a right in the lessee to demand and receive a renewal of the lease, when the term should expire, for such further period as he might elect. The evident intention of the parties was that the term should, in the first instance, be confined to five years, and that any occupancy of the premises by the lessee beyond that term should be in virtue of a renewal of the original lease, and not in virtue of the lease itself. Without a renewal, his right to possession was limited by the express terms of the lease to five years, while with a renewal it would continue through the new term, and then expire. The fixing of the term of possession in the original lease, together with the provision for fixing a further term in the event of a renewal, is wholly inconsistent with any theory that the parties contemplated a possession of indefinite duration. The possession which the lessee might hold and defend was a possession which accompanied, and was commensurate with, the tenancy which the contract created. Strousse was under no obligation to extend credit to Hamill, and with knowledge of the limits of his tenancy he could easily regulate his advancements so that upon the termination of his right of possession under the contract he would be whole.

If he suffered Hamill to be in his debt when his tenancy was at an end, it was his own fault.

The second contract, executed after the first, but during its life, was a lease to Strousse of other real estate upon the same terms and conditions, but reserving an aggregate annual rental of $1,800 for the entire property. It was expressed to be coterminous with the other. Its term of lease was therefore to be measured by the remainder of the term first created, and expire with that term; and, one gross sum having been reserved as rent for all the property, the effect was to make the second contract a part of the first, so that the two instruments should embrace but one lease. A renewal would therefore include all the property, and was due, at the option of Strousse, at the expiration of the time limited by the first contract.

Now, it is entirely clear from the evidence that there never was any renewal, or any pretense of renewal, of the first, second, or combined lease. Strousse refused to accept a renewal offered to him by Mr. Hamill, saying that the old contract was good enough. He was a witness for himself, and insisted strenuously that no new agreement of any kind was ever made, and that his sole claim to possession was based on the original contract. But the tenancy under that contract was a tenancy for five years, and expired in the spring of 1886. The contract was not that upon the expiration of his term he might, if he so desired, continue in the occupancy of the premises for a further fixed period, so that upon his election the further period would be only a continuation of the original term, and would, therefore, be embraced in the contract. The contract was for a renewal of the lease for a period not fixed, but to be designated by Strousse. It was, therefore, incumbent upon him, when the time came, if he desired the property longer, to so notify his landlord, and designate the further period for which he elected to take it. Upon this being done, a new agreement was necessary to cover the new term; and, if the new term was for a longer period than one year, the agreement must be in

writing, or it would be void by the statute of frauds. There having been no renewal of the lease, the tenancy which it created terminated on the 1st day of May, 1886, and the further occupancy of the premises by Strousse was not in virtue of the original contract. It is plain that he held over by the consent of Hamill, and the terms upon which he held were governed by a new contract which the law implies from the facts. It does not appear that any change was made in the conditions upon which he formerly held. He therefore impliedly held subject to them. As the rent reserved in the first lease was payable annually, and as a lease, not in writing, for a longer period than one year would be invalid, his occupancy of the premises after his term by the consent of his landlord would be evidence of a new demise for a year; and, as he continued in possession by the consent of his landlord for a number of years after the expiration of his tenancy, we think he must be regarded as a tenant from year to year during that time. *Schuyler v. Smith*, 51 N. Y. 309; *Digby v. Atkinson*, 4 Camp. 275; Taylor, Landlord & Tenant, sec. 58.

On November 19, 1894, the defendant bank succeeded to the title of Hamill by virtue of the sale and conveyance made by the trustee. The bank was, of course, bound by any valid contract subsisting between Hamill and Strousse in relation to the property at the time the trust deed took effect as to Strousse; but its rights would be unaffected by any agreement between the original parties made after that time. The trust deed was not recorded until the 30th day of November, 1889. At that time the deed took effect as to Strousse, even if he had no previous knowledge of its existence. But, in addition to the constructive notice which the record imparted, Strousse had actual notice of the execution of the deed. He examined the records in December, 1889, and found it. Also, in the same year, he had information of it from Hamill.

On the first day of January, 1888, the indebtedness from Hamill to Strousse, after deducting the rents which had accrued, was $4,500. This Hamill settled by his note. When

or how this indebtedness arose, whether it was a debt left over from the original term, whether it accrued partly or wholly afterwards, or with what rights in relation to the possession of the property it invested Strousse as against Hamill, we can form no idea from the record; but the questions are immaterial, and we shall assume that, even if it accrued while Strousse was merely a tenant from year to year, by some agreement between himself and Hamill, the latter could not terminate the tenancy until the debt should be canceled by the rent. Strousse would then be entitled to retain his possession until, by the application upon it of the rents, the note, with its compound interest, should be paid. This was the only indebtedness to Strousse from Hamill outstanding when the trust deed was recorded, or when Strousse actually knew that it was executed. All the other notes mentioned in the complaint were executed after 1889, except the note of William A. Hamill, Jr., for $1,779, which the defendant Hamill assumed. But he did not assume that note until August, 1891, and it therefore did not become his debt until that time. Whatever rights in the possession of the property the indebtedness contracted after 1889 may have given Strousse as between himself and Hamill, those rights were subject and subordinate to the trust deed. By applying the yearly rent of $1,800 upon the note for $4,500, given January 1, 1888, the note would be fully paid before the expiration of the year 1892. As the debt evidenced by that note was the only one to which the trust deed was subject, when the bank received the deed from the trustee it took the property unincumbered by any possessory right in Strousse arising from his dealings with Hamill, excepting only such rights as were incident to a tenancy from year to year. The rents were thereafter due to the bank, and it could resort to its possessory remedy for their nonpayment, or it could determine the tenancy in the manner provided by the statute, and then recover the possession. What the grounds of the bank's proceeding for possession were does not appear, but no complaint is made that it was in any

respect irregular; and upon the assumption that it was in conformity with the law the right of the bank to judgment in that proceeding cannot be gainsaid.

The position is now taken in behalf of the plaintiff that his complaint does not entitle him to equitable relief; that it appears on its face that he could have interposed the facts upon which he relied to protect him in his possession as a defense to the action brought by the bank; that, therefore, his remedy at law was ample, and his case was not within the jurisdiction of a court of equity. The argument proceeds further to the effect that the answer of the bank, setting up the execution by Hamill of the trust deed to Copeland, the default in the payment of the note which it secured, the sale and conveyance to the bank of the property it described, and praying a decree establishing its title, and granting it other relief against the plaintiff, set forth no facts upon which the court was authorized to decree equitable relief to the defendant, because it showed upon its face that whatever remedy the defendant had was at law, by an action for the possession of the property. We concede the general propositions advanced by counsel. The remedy at law of each of the parties was adequate. An action for the possession of the property was open to the defendant, and it appears that it did commence one; and, under our present system of practice, whatever right the plaintiff had by virtue of his contract with Hamill to retain the possession could have been set up by him as a defense and adjudicated in that action. But the points made in the argument were never suggested until now. The suit was brought, the answer filed, the case tried, the decree rendered, and the errors assigned in this court upon the theory, accepted by both parties, that the case as made by the pleadings was one of equitable cognizance; and the question is whether either party can now be heard to say that it was not. Under the practice prescribed by the code, two objections are in order at any time,—one to the jurisdiction of the court over the subject of the action, and the other that the complaint does not state facts sufficient to constitute a

cause of action. All other objections, if not taken in time, are waived. Respecting the first, it is not necessary to say much. It is not, and could not successfully be, disputed that the trial court had jurisdiction over the subject-matter of this suit. The objection is that the case as made by the pleadings was not within its equitable jurisdiction ; but this is not the kind of jurisdiction to which the code has reference. The term " equitable jurisdiction," when used in connection with cases arising under the code, refers solely to the method of procedure by which a court, having acknowledged jurisdiction of the subject-matter of the action, shall adjust the rights of the parties before it. The code provision to which we have alluded has reference to the general jurisdiction of the court, and not to the manner in which it shall take cognizance of the causes submitted to it.

If the allegations of the complaint were true, the plaintiff had possessory rights in the property in controversy, which he was entitled to assert and have adjudicated. The complaint is, in some respects, not very specific, but it avers the possession, the continuance in possession, and the right of possession, of the plaintiff, in pursuance of the contract with Hamill, and of the performance by the plaintiff of all the conditions of the contract. It contains enough to permit the introduction of evidence of a renewal of the lease, and of any other matters arising out of the contract which entitled him to retain the possession. It was the failure of his proofs to support his allegations which resulted in the failure of his case. There is not such a want of a cause of action on the face of the complaint as would authorize us to entertain an objection to its sufficiency, made now for the first time, even if it were not made by the plaintiff himself. But, as we understand it, the objection is not that no cause of action is stated, but that the cause set forth is of legal, and not of equitable, cognizance. Even if this objection came from the defendant, we should summarily dismiss it. To be available here it must have been made in apt time below. " The court of chancery will not refuse to take jurisdiction of a case, and

to make a proper decree therein, merely upon the ground that the complainant has a perfect remedy by an action at law, when the parties have submitted themselves to the jurisdiction of the chancellor without objection." *Bank of Utica v. Mersereau*, 3 Barb. Ch. 528, 574. See, also, *Cumming v. Mayor, etc.*, 11 Paige, 596 ; *Creely v. Brick Co.*, 103 Mass. 514; *Amis v. Myers*, 16 How. 492; *Sexton v. Pike*, 13 Ark. 193.

In reference to the answer, we have this to say : The plaintiff brought the defendant into a court of equity to defend a suit, the purpose of which was to obtain a decree impairing, if not destroying, a claim which it asserted to property. In self-defense it was compelled to set up the facts constituting its title ; and although, from those facts, it appears that it might have maintained an action at law for the possession of the property, yet the plaintiff, having brought it into court, and made a statement of its title necessary in order to defeat his action, was not in a position there to make the objection to the answer which he now makes ; much less can he make it here. However, he offered no objection there, and, in any view, the objection comes too late. Upon his invitation the court took cognizance of the case, and he must abide by the record he has made. The chancellor, having, by consent of parties, taken jurisdiction of the case, was authorized to render such decree as would finally adjust and settle their conflicting claims ; and upon the facts as disclosed by the record we think the decree rendered was proper and just.

There is a peculiarity about the plaintiff's present position which we cannot forbear making the subject of some comment. Throughout the whole course of the litigation until the present time he has vigorously maintained that the equities of the case were with him, and that the decree should have been for him, as prayed in his complaint, and against the defendant. Now, to avoid the decree against him, he turns suddenly upon his tracks, and says that the action which he brought was one which he had no right to bring, that his suit ought to be dismissed, and that the defendant's case

should fall with his. His efforts to discredit his own pleading, involving as they do a species of self-stultification, are not calculated to produce a favorable impression, and are deserving of no serious consideration.

After the court had announced its decision, the plaintiff applied for leave to amend his complaint, which leave was refused, and error is predicated on the refusal. If the amendments desired had been material, or might have affected the result, we should still be unable to say that, in declining to receive them after trial and decision, the court abused its discretion; but everything proposed which was of any consequence was already in the complaint in some form; the evidence was introduced and received as if the proposed allegations had been made with the utmost distinctness and detail; and upon the question whether the lease was ever renewed, the amendments would have directly contradicted the plaintiff's own testimony.

In our opinion, the judgment below was right, and we therefore affirm it.

*Affirmed.*